**BELL et al. v. CRABB et al.  (No. 278–3515.)**

(Commission of Appeals of Texas, Section B. Oct. 25, 1922.)

1. Specific performance ☞117—Issue of abandonment of homestead may be raised by general denial.

Where the answer in a suit for the specific performance of a contract to convey mineral rights alleged that the property conveyed by the deed and contract was a homestead at the time the contract and deed were placed in escrow, and prior and subsequently thereto, to which a general denial was interposed, the pleadings raised the issue of the continuous homestead character of the property, and rendered pertinent the evidence showing its abandonment as a homestead prior to the trial.

2. Homestead ☞57(3)—Acquistion of residence property, coupled by occupancy, is conclusive evidence of homestead character.

The acquisition of title to residence property, coupled with its occupancy and use by the family as a home, constitute the highest and most conclusive evidence of its homestead character.

3. Homestead ☞164—Defendant held to have abandoned homestead.

Where defendant, in an action for specific performance of a contract to convey mineral rights, later purchased other property, and moved there with his family, that property became the homestead of the family, and the property in suit lost its homestead character.

4. Husband and wife ☞267(1)—Husband may convey community property without wife joining.

The husband has power to convey, or contract to convey, community real estate without being joined therein by the wife.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by R. R. Bell and another against W. W. Crabb and another. Judgment in favor of plaintiffs was reversed by the Court of Civil Appeals (220 S. W. 623), and they bring error. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed.

Stuart, Bell & Moore, of Gainesville, for plaintiffs in error.

J. R. Stubblefield, of Eastland, G. W. Dunaway, of Fort Worth, and R. L. Rust, of Eastland, for defendants in error.

McCLENDON, P. J.  On July 9, 1918, a contract was entered into between W. W. Crabb and wife on the one hand, and R. R. Bell and W. S. Moore on the other, whereby the former, in consideration of the sum of $10,000 cash to be paid by the latter, agreed to convey to them a 1/16 undivided interest in all oil, gas, and other minerals on or under a 93½-acre tract of land in Eastland

county. At the same time Crabb and wife signed and acknowledged a general warranty deed conveying to Bell and Moore the minerals and mineral rights as provided in the contract. This deed and contract were placed in escrow in a bank to abide the fulfillment of the contract, which provided that the grantors were to furnish an abstract of title within seven days, the grantees were to have seven days to examine the title, and the grantors should have ten days within which to make corrections in the title, after which time Bell and Moore should have a reasonable time to accept the title. $500 was deposited with the bank by Bell and Moore to be forfeited to the grantors as liquidated damages in case the grantees did not comply with their undertaking. The provisions of the contract with regard to furnishing abstract and examination of title were complied with, and certain defects in the title were pointed out by the attorneys for the grantees. To cure some of these defects it was necessary that a suit be brought, and this suit was instituted by the grantors. While it was pending, however, Crabb repudiated the contract, whereupon the instant suit was brought by Bell and Moore against Crabb and wife for specific performance. Before the trial a judgment favorable to Crabb and wife was rendered in the suit to clear title. The trial in the present case resulted in a judgment for specific performance in favor of plaintiffs upon a directed verdict. The Court of Civil Appeals reversed this judgment and remanded the cause for a new trial. 220 S. W. 623.

The property in question belonged to the community of Crabb and wife, and at the time the contract and deed were placed in escrow it was their homestead. However, about December 15, 1918, Crabb purchased a residence in Ranger, to which he moved with his family and continued thereafter to reside there. The decision of the Court of Civil Appeals to the effect that the trial court committed error in directing a verdict for the plaintiffs is rested upon holdings by that court in effect: (1) That there was no pleading by plaintiffs raising the issue of abandonment of the homestead; and (2) that the evidence did not conclusively show such abandonment.

The Court of Civil Appeals recognized the rule announced in Goff v. Jones, 70 Tex. 572, 8 S. W. 525, 8 Am. St. Rep. 619, and reaffirmed in subsequent holdings of the Supreme Court to the effect that an executory contract for the sale of the homestead made by the husband and wife or the husband alone is unenforceable specifically so long as the homestead exists, but that the contract is nevertheless binding upon the husband, and, if the homestead is subsequently abandoned, its specific performance may be decreed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586.

The court also held that an escrow deed of the husband and wife to the homestead has the same status as an executory contract for the sale of land, and is subject to retraction by the wife at any time prior to the performance of the conditions under which its delivery to the grantee could be demanded. The correctness of this holding is vigorously assailed by plaintiffs in error. In the conclusion we have reached, however, this question becomes immaterial, and we refrain from expressing any opinion upon it.

[1] Defendants in opposition to plaintiff's prayer for specific performance plead that the property conveyed by the deed and contract was their homestead at the time the contract and deed were placed in escrow, and prior and subsequently thereto. To this pleading plaintiffs interposed a general denial. We think there can be no serious question but that the pleadings thus raised the issue of the continuous homestead character of the property, and rendered pertinent the evidence showing its abandonment as a homestead prior to the trial. It might be noted also that the testimony upon this subject appears in the record without objection.

The only evidence bearing upon the question of the continued existence of the homestead character of the property was that of defendants themselves. As their testimony upon this issue is brief we here copy it in full. Mrs. Crabb, after testifying that the property in question was their homestead when the deed and contract were placed in escrow, says:

"We are now living at Ranger. We have been there since December, 1918. I do not remember just the date. We bought a home in Ranger and moved there."

Mr. Crabb testified:

"I got that place up there and moved to Ranger some time in December, somewhere I reckon about the 15th, 1918. That place out there had been my home during my marriage relations and it was community property of me and my wife. I bought a home in Ranger and have been living there ever since. I am living there now. I do not know what my home at Ranger is worth. I could hardly tell."

"I am living there with my family. I am living there and sending my children to school."

[2, 3] There was no testimony of any character tending to show that this removal by defendant and his family to the Ranger residence and their continued occupancy of it as a home was other than permanent in character. Neither of the defendants intimated that there was anything of a temporary nature in their removal to Ranger, or that they had any intention whatever of returning to the land in question. The acquisition of title to residence property, coupled with its occupancy and use by the family as a home, constitute the highest and most conclusive evidence of its homestead character. Under the evidence quoted, it follows as a matter of law that when defendants purchased the Ranger property and moved there with his family that property became the homestead of the family, and the property in suit lost its homestead character. Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843, and authorities therein cited and reviewed.

[4] Under this view of the conclusive character of the testimony as showing an abandonment of the homestead rights in the property in question, the validity of the wife's joinder in the deed and contract of sale became immaterial, since the husband has the power to convey or contract to convey community real estate without being joined therein by the wife. It becomes unnecessary, therefore, to inquire into the correctness of the trial court's action in excluding evidence tending to show that the notary had not complied with the law governing the taking of the wife's privy acknowledgment to the deed.

We conclude that the judgment of the Court of Civil Appeals should be reversed, and that of the district court affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.