## ALAMO LUMBER CO. et al. v. WALKER et ux.

### No. 10320.

Court of Civil Appeals of Texas. Galveston.

Feb. 19, 1937.

Rehearing Denied April 8, 1937.

Tamp W. Grobe, of Houston, and C. R. Grobe, of Columbus, for appellants.

Emanuel Roos, of Eagle Lake, and G. H. Miller, of Columbus, for appellees.

CODY, Justice.

Appellees, in the district court of Colorado county, brought this suit to enjoin the Lumber Company and the constable of a precinct of that county from selling, under an order of sale foreclosing an attachment lien issued by a district court of Bexar county, a 40-acre tract of land located in Colorado county about seven miles from Eagle Lake, claimed by them as a homestead, and to remove the cloud thereby cast on their title. It was a nonjury case. The court gave the judgment asked by appellees, and filed neither findings of fact nor conclusions of law.

Evidence given in support of the judgment was: Appellees, and such children as they had before 1929, had lived on the 40-acre tract from 1918 until that year, when they moved one of the two dwelling houses thereon therefrom to a lot in Eagle Lake, being the house that had been occupied by appellees and family. The other dwelling house was occupied by appellee Carter Walker's parents, whom he supported; his father died three years before the trial. During the time prior to the removal of one of the residences—not to detail the evidence at length—appellees had used, occupied, and operated their 40-acre farm as is usual with farmers. The two dwelling houses on his farm were alike, except that the one which he moved into Eagle Lake had a sleeping porch attached to it. This move was made to put his children in school, as on the farm they were about two miles from the nearest school, which was but a seven-grade school, and too far removed for his children to go to alone; and the winter rains made the roads impassable in that section. Appellees never intended the town property to be their homestead, and never intended to abandon their farm as their homestead, but always claimed it as their home. And again—not to detail the evidence at length—Walker continued to make the same use of his farm after he moved the dwelling house he lived in to town, and was regularly at the farm daily, and frequently at night, staying there in his other dwelling; in every room of which was furniture belonging to him. During this time the barn on the farm burned down, which he replaced at a cost of $500. He offered the town property to the Lumber Company in part satisfaction of its debt—it was heavily mortgaged—and also the onion crop growing on the farm. The Lumber Company accepted such offer on a Friday, but ran the attachment on the 40-acre tract the next day.

Evidence against the judgment was: That Walker ran a meat market in town, into which, after moving to town, he put about $2,300 additional equipment. He added about $2,000 worth of improvements to the house he moved to town, which, for a man of his circumstances, was consistent with the intention of permanently living there.

At the time of the trial the appellees were still living in the town property; and the sworn tax rolls of the county, properly signed by him, showed that Carter Walker claimed the town property as his homestead for tax exemption purposes, which Walker explained away by saying that these were filled out by the tax assessor, and that he never heard of the $3,000 state tax-exemption; nor knew what it meant.

Appellants ably attack the court's judgment in a strong concise brief, filled with compact sentences. Their position is that the dwelling house in Eagle Lake had been impressed with the homestead character while it was yet located on the farm; and that the homestead character attaches to a dwelling house primarily, and to the land to which it is fixed only secondarily, citing as in point Cullers v. James, 66 Tex. 494, 1 S.W. 314; Grimes v. Cline (Tex.Civ.App.) 300 S.W. 235; and appellants contend there

must be an actual physical abandonment of the removed dwelling house before it could lose its homestead character, citing Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com.App.) 254 S.W. 935; and also further contend that appellees could have successfully enjoined a forced sale of the town property, thereby proving it to be appellees' homestead.

Further, appellants contend that, as appellees were using the town house as their homestead and had always done so, they could not detach that character from it by the mere intention in the future to abandon it, and have a home on the farm, quoting from the Supreme Court in Bell v. Crabb, 244 S.W. 371, 372: "The acquisition of title to residence property, coupled with its occupancy and use by the family as a home, constitute the highest and most conclusive evidence of its homestead character."

█ It is elementary, of course, that, whether the homestead character is fixed to specific property, is a fact question. We cannot say, from the evidence of the use and occupancy that appellees continued to make of the farm and the residence that remained on it, that—had the court concluded there had never been a physical abandonment of the farm dwelling as a homestead—he would have been without reason to sustain him. Certainly, under authority of Farmer v. Hale, 14 Tex.Civ.App. 73, 37 S.W. 164 (writ denied), the court was amply justified in rendering judgment for appellees. Believing the judgment should be affirmed, it is so ordered.

Affirmed.

## On Motion for Rehearing.

█ Appellant does not complain of the judgment of the court below as being against the preponderance of the evidence, but takes the ground that its judgment should be reversed and rendered. To render judgment for appellant here, we would have to find that the evidence was such that, had the case been tried to a jury, it would have been error for the court not to have instructed a verdict for appellant. Irrespective of the weight to be given it, appellees' evidence was that they had never abandoned the 40 acres as their homestead, and always expected to return to it. The fact that they had resided in the house which they removed to the lot belonging to them in Eagle Lake, and continued to reside in it after it was removed to Eagle Lake, did not necessarily destroy the homestead character of the 40-acre tract. It is not true that the homestead exemption attached, before the removal of the house, primarily to the house, and secondarily to the 40 acres. On the contrary, it attached to the 40 acres and the improvements thereon situated as a whole. After the removed residence was detached from the 40-acre tract, the other residence still remained there attached, and this "un-detached" residence was as much under the shield and protection of the homestead exemption as had been the house in which appellees resided at the time of its detachment. This, because it was truly a part of the 40-acre homestead as was the detached residence before its detachment. There is nothing in the act of removing the excess residence off of the homestead to automatically denude the 40-acre tract of its homestead character. The same process by which our Supreme Court reasoned in Cullers v. James, cited in our opinion, that the homestead exemption survived to protect a house, when the head of a family lost title to realty to which it attached, would argue for the survival of the homestead exemption to protect the 40-acre tract and residence that still remains on it, after the extra residence was removed. We do not base our affirmance of the judgment, however, on metaphysical and doubtful reasoning: for in this place we have good cause to know the ease with which the worse can be made seem the better reason. We plant our affirmance on the sure fact that in this case there was sufficient evidence—question of preponderance aside—to make the question, of whether there had been an abandonment of the 40-acre tract as a homestead, one for a jury. The most that can be said of the reasoning of appellant, both on the hearing and on the motion for rehearing, is that it is a strong argument why appellees' claim, not to have abandoned the 40-acre tract as their homestead, should not be accepted as true. The fact remains, however, that appellees introduced evidence on the trial that makes the issue of whether they abandoned the 40-acre tract as a homestead one of fact; and that there is no evidence before us of any act done by appellees which destroyed the homestead character with which the 40-acre tract had been invested, as a matter of law. The motion for rehearing is overruled.

Overruled.