## CAMPBELL v. FIRST NAT. BANK IN LUBBOCK et al. (three cases).
### No. 3965.

Court of Civil Appeals of Texas. Amarillo.
Nov. 4, 1935.

Rehearing Denied Nov. 25, 1935.

See, also, 82 S.W.(2d) 954.

Smith & Smith, of Anson, for plaintiff in error.

Wilson, Randal & Kilpatrick, of Lubbock, for defendant in error First Nat. Bank in Lubbock.

Vickers & Campbell, of Lubbock, for defendant in error McLarty-Crouch Lumber Co.

MARTIN, Justice.

Three separate suits were filed to foreclose different liens alleged to exist against lots 5 and 7, block 1, Merrill addition to the town of Lubbock. These were consolidated and tried and disposed of together. A discussion of one of these sufficiently disposes of all.

The First National Bank in Lubbock (hereinafter called the bank) filed suit against Tom R. Campbell (hereinafter called Campbell) to foreclose its deed of trust lien, dated March 17, 1930, signed by Campbell, covering the above property, and given to secure a note of Campbell's for $5,000, dated March 3, 1930. To this Campbell filed an answer consisting of a general demurrer and general denial and special plea that said property "was, at the time of the execution of said trust deed, and long prior thereto, the business homestead property of the defendant, T. R. Campbell, actually occupied, used, and claimed by him, as such, and which fact or facts were at said time, and prior to said time, well known to plaintiff."

To this answer the bank replied by supplemental petition that Campbell was on the dates last mentioned engaged in the wholesale coal business, with an office in the Myrick building in the town of Lubbock, and that the lots in question were used only incidentally in connection with said business. Trial was to the court, judgment was for the bank, granting it the relief prayed for. No findings of fact appear in the record.

We do not discuss the bank's objection to a consideration of the one assignment of error and the propositions thereunder contained in Campbell's brief. The former is multifarious and the latter only abstract statements of the law, but it is not necessary to discuss either in view of our disposition of this case.

Nor do we pause to cite authorities for the well-known rule of law that the presumption is that the trial court found all facts in favor of the successful party having support in the evidence, when, as here, a general judgment was rendered in favor of such party.

The only legal issue presented is whether or not the implied finding of the trial court against Campbell's claim of a business homestead has any support in the evidence.

The evidence in its most favorable light, which supports the court's implied finding, is that Campbell's main business was that of a wholesale dealer in coal. He had an office uptown on the second floor of the Myrick building. He there employed a stenographer, and had a fully equipped office. A retail coal business was conducted on the lots in question, where the man in charge received one-half the profits for running same. Twelve or fourteen other coalyards were being operated at the same time by Campbell at widely separated points. The exact amount of wholesale business done by him does not appear, but circumstantially it is shown that such business was an extensive and fairly large one. The retail business on the lots in question was in another part of town from the Myrick building, distance not shown. Campbell quit his wholesale business on the last day of March, 1930, and sublet his quarters to others.

We are of the opinion that at least an issue was raised, justifying the trial court in finding that Campbell's wholesale coal business conducted from the Myrick building was his principal business, and that the coal business located on lots 5 and 7 was only incidental thereto. We have been largely influenced to thus decide by the case of Bowman v. Stark (Tex. Civ.App.) 185 S.W. 921, and the authorities therein collated. The facts of this case are strikingly similar to the present one.

We have quoted the material portion of Campbell's answer setting up the claim of a business homestead. Nowhere therein does he allege or refer to his marriage status. Was he married? Was he the head of a family? We do not know and cannot find out from either the pleading or evidence. The only reference in the entire record to the constituent members of his family was to a son "who looked like he was over twenty-one," and who ran a coal business at Anson. His wife, if he had one, does not join him in defense of the alleged business homestead, nor is there any reference to her by any witness. The only evidence we find touching this matter was brought out by the bank on cross-examination of Campbell, in which he answers in substance that he resided at this time with his family on 20th street, in the town of Lubbock, and that he had a residence homestead there when he got it paid for. This does not show the constituent members of his family, his marriage status, or whether he was under a legal or moral obligation to support those with whom he resided. See L. E. Whitham & Co. v. Briggs' Estate (Tex.Com.App.) 58 S.W.(2d) 49; Roco v. Green, 50 Tex. 483; 22 Tex.Jur. pp. 34, 35-39, 40; Rock Island Plow Co. v. Alten et al., 102 Tex. 366, 116 S.W. 1144.

The right of a surviving husband to mortgage the homestead under certain conditions has been ofttimes recognized. See Spencer v. Schell, 107 Tex. 44, 173 S.W. 867; Bateman Bros. v. Pool, 84 Tex. 405, 19 S.W. 552.

The burden of proving his defense rested upon Campbell. Taylor v. First Nat. Bank (Tex.Civ.App.) 288 S.W. 235; Roe v. Davis (Tex.Civ.App.) 142 S.W. 950, 951.

We do not feel authorized to say that the trial court's finding, in view of the above, was without evidence to support it.

Campbell correctly contends that a party having two business homesteads has the right to elect which he will hold. The judgment of the trial court in the present case amounts to a finding that he had made this election prior to the date of the trust deed in question. Bowman v. Stark, supra.

The judgment is affirmed.